UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK CAIN,

        Plaintiff,

v.

THE PEOPLE OF THE STATE OF
MICHIGAN, RICK SNYDER, KAREN
JOHNSON, and MICHIGAN STATE
POLICE,

        Defendants.

Case No. 14-12567

Hon. Patrick J. Duggan

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

*Pro se* Plaintiff Derrick Cain instituted this civil rights action against Defendants State of Michigan, Governor Rick Snyder, Karen Johnson, and the Michigan State Police (collectively, "Defendants") pursuant to 42 U.S.C. § 1983 on June 30, 2014.  In his Complaint, Plaintiff challenges the constitutionality of Michigan's Sex Offender Registration Act ("SORA" or "Act"), as amended in 2011, and seeks monetary and equitable relief.  Plaintiff claims that the Act's provisions violate his Fourteenth Amendment due process rights, the constitutional prohibitions on double jeopardy and *ex post facto* laws, the Eighth Amendment, and also violate state law.

Presently before the Court is Defendants' Motion to Dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff declined to respond to Defendants' Motion despite being apprised of the timeframe in which to do so.  Having determined oral argument would not significantly aid the decisional process, the Court dispensed with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).  For the reasons stated herein, the Court will grant Defendants' Motion and dismiss Plaintiff's Complaint.

## I.      BACKGROUND

### A.      Statutory History

"In 1994, Congress passed the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, title 17, 108 Stat. 2038, as amended, 42 U.S.C. § 14071, which conditions certain federal law enforcement funding on the States' adoption of sex offender registration laws and sets minimum standards for state programs."  *Smith v. Doe*, 538 U.S. 84, 89-90, 123 S. Ct. 1140, 1145 (2003).  Although the federal statute gave the states three years from September 1, 1994 within which to create registration programs, 42 U.S.C. § 14071(f)(1) (1994), Michigan first enacted SORA in 1994.[1]  *Doe v. Snyder*, 932 F.

---

[1] By 1996, every State, the District of Columbia, and the Federal Government had enacted some variation of Megan's Law."  *Smith*, 538 U.S. at 89-90, 123 S. Ct. at 1145.

Supp. 2d 803, 807 (E.D. Mich. 2013); *Akella v. Mich. Dep't of State Police*, 67 F.

Supp. 2d 716, 720 (E.D. Mich. 1999).

The SORA

> requires individuals convicted of one of the enumerated criminal
> sexual offenses to register and to update their address within ten days
> of relocation. MICH. COMP. LAWS § 28.723(a), (b); MICH. COMP.
> LAWS § 28.729. In the event that an individual fails to register, the
> Act provides such conduct constitutes a felony. The Michigan
> Department of State Police is required to maintain a repository of the
> information compiled pursuant to the Act in the form of a
> computerized database. MICH. COMP. LAWS § 28.728.

*Akella*, 67 F. Supp. 2d at 720.  The law enforcement database, which is distinct

from the publically-accessible website, contains a wealth of information about

individuals required to register.[2]  *Compare* Mich. Comp. Laws § 28.727(1)

(delineating information required upon registration and kept in a law enforcement

database) *with* Mich. Comp. Laws § 28.727(2) (setting forth the required contents

for the website.  The publically-accessible information kept on the website

includes:

> (a) The individual's legal name and any aliases, nicknames, ethnic or
> tribal names, or other names by which the individual is or has been
> known.

_____

[2] "The SORA, as it was first enacted, was designed as a tool solely for law enforcement agencies, and registry records were kept confidential.  1994 Mich. Pub. Acts 295 ('[A] registration is confidential and shall not be open to inspection except for law enforcement purposes.').  As of September 1, 1999, however, the SORA was amended to create the [State of Michigan's Public Sex Offender Registry], which can be accessed by anyone via the internet."  *Doe XIV v. Mich. Dep't of State Police*, 490 F.3d 491, 495 (6th Cir. 2007).

3

(b) The individual's date of birth.

(c) The address where the individual resides. . . .

(d) The address of each of the individual's employers. For purposes of this subdivision, "employer" includes a contractor and any individual who has agreed to hire or contract with the individual for his or her services. . . .

(e) The address of any school being attended by the individual and any school that has accepted the individual as a student that he or she plans to attend. . . .

(f) The license plate number or registration number and description of any motor vehicle, aircraft, or vessel owned or regularly operated by the individual.

(g) A brief summary of the individual's convictions for listed offenses regardless of when the conviction occurred.

(h) A complete physical description of the individual.

(i) The photograph required under this act. . . .

(j) The text of the provision of law that defines the criminal offense for which the sex offender is registered.

(k) The individual's registration status.

(l) The individual's tier classification.

Mich. Comp. Laws § 28.727(2).  While there is overlap between the contents of the database and the website, it suffices to say that the database is far more exhaustive, as one would expect from a law enforcement tool.

4

"Since its adoption [in 1994, the] SORA has undergone numerous

amendments." *Doe*, 932 F. Supp. 2d at 807.

> In 1997, SORA was amended to require law enforcement agencies to make registry information available to the public during business hours. A 1999 amendment increased the number of offenses for which registration was required and mandated that a less-detailed version of the registry be made available to the public online.

> SORA was again amended in 2002, 2004, and 2006. These amendments, among other things, increased reporting requirements for registrants; removed the registration requirement for individuals convicted under the HYTA after October 1, 2004; barred registrants from working, residing, or loitering within 1,000 feet of a school; and created a program whereby members of the public could be notified electronically when a sex offender moved into a particular zip code.

> The most recent amendment to SORA came in 2011, which significantly altered the statute to comply with the federal Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. § 16901, *et seq.* As amended in 2011, SORA now categorizes registrants into three tiers which determine the length of time individuals must register and the frequency with which they must report. Tier classifications are based solely on a registrant's offense and do not factor in an individualized determination of risk. There is no way to reduce one's tier classification or to remove oneself from the list. SORA 2011 extended the length of registration for most registrants, and individuals who were assigned to Tier III, Plaintiff[] included, are now required to register for life. The 2011 amendment also (1) expanded the in-person reporting requirement to require registrants to report to the police station within three days of establishing any new electronic mail address, instant message address, or other designation used in Internet communications or postings; (2) expanded registrants' reporting obligations before traveling; and (3) increases the number of times registrants must regularly report in-person each year.

*Id.*

**B.      Plaintiff**

Plaintiff was convicted of criminal sexual conduct in the third degree on

May 16, 1997.  (Compl. ¶ 10.)  Plaintiff served a term of incarceration and was

released from custody on February 15, 2011.  (*Id.*)  As the preceding section makes

clear, SORA was amended several times in the years after Plaintiff's conviction.

These amendments impacted Plaintiff in various ways, one of which is that at the

time of his conviction, Plaintiff was only required to register as a sex offender for

ten years, whereas now, Plaintiff is classified as a Tier III offender and must,

therefore, register for the duration of his natural life.

As a result of being required to register, Plaintiff lost a job with an employer

who "was aware of his background[]" but succumbed to pressure from community

members who "brought complaints based on subjective fears" of Plaintiff's sex-

offender status.  (*Id.* ¶ 15.)  Plaintiff asserts that the public nature of the sex

offender registry has rendered him susceptible to other harms as well.  For

instance, "[P]laintiff has been followed, his house was shot up in 2012 while he

was in it, several breakin [*sic*] attempts have occurred[.]"  (*Id.*)  Moreover, "the

SORA obligations deprive [P]laintiff of any private life, and are tantamount to

being displayed in a video zoo, where [P]laintiff can be tracked, hunted[,] . . .

monitored, harassed, in all of his every day activities, where he works, travels, . . .

lives" and further deprive Plaintiff of his "ability to hide or be left alone[.]"  (*Id.*)

6

### C.    Legal Proceedings

Plaintiff instituted the present action on June 30, 2014 challenging the 2011 amendments to SORA, naming as defendants the State of Michigan and the Michigan State Police, as well as Governor Snyder and Karen Johnson, both of whom are named in their individual and official capacities.[3]

Although Plaintiff's Complaint does not contain separate counts, he appears to generally claim that the retroactive nature of SORA and its extensive reporting requirements violate his constitutional rights.  The Court construes Plaintiff's pleading as containing claims arising under: (1) the *Ex Post Facto* Clause of the United States Constitution; (2) the Double Jeopardy Clause of the Fifth Amendment; (3) the Eighth Amendment; (4) the substantive component of the Fourteenth Amendment's Due Process Clause; and (5) unspecified state laws.

On November 12, 2014, Defendants collectively moved to dismiss the entire action pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff declined to file a response.

## II.    GOVERNING LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) allows the Court to assess whether a plaintiff's pleadings state a claim upon which relief

---

[3] Defendants have indicated that Karen Johnson "is an employee of the Michigan State Police and is the manager of the Sex Offender Registration united within the Department of State Police."  (Defs.' Br. 2 n.1.)

may be granted.  As articulated by the Supreme Court of the United States, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 570, 127 S. Ct. 1955, 1974 (2007)).  This facial plausibility standard requires claimants to put forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the requisite elements of their claims.  *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1965.  Even though a complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citation omitted).

While courts are required to accept the factual allegations in a complaint as true, *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965, the presumption of truth does not apply to a claimant's legal conclusions, *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.  Therefore, to survive a motion to dismiss, a plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65) (internal citations and quotations omitted).

8

Compared to formal pleadings drafted by lawyers, a generally less stringent standard is applied when construing the allegations pleaded in a *pro se* complaint.  *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 596 (1972); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (reaffirming rule of more liberal construction of *pro se* complaints less than two weeks after issuing *Twombly*).  The leniency with which courts construe *pro se* plaintiffs' complaints, however, does not abrogate the basic pleading requirements designed to ensure that courts do "not have to guess at the nature of the claim asserted."  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).  *Pro se* plaintiffs still must provide more than bare assertions of legal conclusions to survive a motion to dismiss.  *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).  Likewise, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law."  *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).

## III.   ANALYSIS

Defendants seek dismissal of Plaintiff's Complaint on several different grounds.  First, Defendants contend that Plaintiff's Complaint fails to put them on notice of the nature of the claims Plaintiff has brought and the grounds upon which

those claims rest.[4]  Second, Defendants contend that the Eleventh Amendment to

the United States Constitution bars Plaintiff's claims against the State of Michigan

and the Michigan State Police, as well as Plaintiff's claims seeking monetary relief

against Snyder and Johnson in their official capacities.  Next, Defendants argue

that Snyder and Johnson are shielded from suit in their individual capacities by

virtue of the doctrine of qualified immunity.[5]  Fourth, and lastly, Defendants

contend that Plaintiff has failed to state a claim that the SORA, or any of its

subsequent amendments, abridges his constitutional rights, thus rendering him

incapable of establishing the requisite elements of a claim pursuant to § 1983.[6]

## A.    Eleventh Amendment Immunity

### 1.    *The State of Michigan and the Michigan State Police*

---

[4] The Court does not address this line of argumentation, as it is fairly clear
what Plaintiff is complaining of.  While it is true that "[t]here are no factual
allegations stating what actions either Governor Snyder or Karen Johnson
performed[,]" given their respective positions, the Court is able to draw the
necessary inferences regarding why Plaintiff might have named them as defendants
in the present action.

[5] Unlike the Eleventh Amendment, a defendant's invocation of the defense
of qualified immunity is not jurisdictional.  Because the Court ultimately concludes
that Plaintiff has failed to state a viable legal claim under any theory he has set
forth in his pleading, the Court need not address Defendants' contention that
Governor Snyder and Johnson are entitled to qualified immunity.

[6] In order to prevail on a § 1983 claim, a plaintiff must establish: "(1) the
deprivation of a right secured by the Constitution or laws of the United States (2)
caused by a person acting under the color of state law."  *Miller v. Sanilac Cnty.*,
606 F.3d 240, 247 (6th Cir. 2010) (quotation omitted).

Defendants claim that Plaintiff's maintenance of the suit against the State of Michigan and the Michigan State Police are barred by the Eleventh Amendment, as the State's immunity from suit has been neither abrogated nor waived.

The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state." U.S. Const. amend. XI. This Amendment has been interpreted as "an explicit limitation of the judicial power of the United States." *Missouri v. Fiske*, 290 U.S. 18, 25, 54 S. Ct. 18, 20 (1993). In the absence of consent or congressional abrogation, a suit in which a State or one of its departments or agencies is named as a defendant is proscribed by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 908 (1984) (citing *Fla. Dep't of Health & Rehab. Serv. v. Fla. Nursing Home Ass'n*, 450 U.S. 147, 101 S. Ct. 1032 (1981)); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 109 S. Ct. 2304, 2309-10 (1989). The applicability of the Eleventh Amendment is a question of law. *Timmer v. Mich. Dep't of Corrs.*, 104 F.3d 833, 836 (6th Cir. 1997).

Here, Plaintiff has not identified any facts that would support a finding that the State has waived its immunity or that Congress has expressly overridden it. As such, the Court concludes that Plaintiff's claims against the State of Michigan and

11

the Michigan State Police are barred by the Eleventh Amendment.[7] *See, e.g.*,

*Pennhurst*, 465 U.S. at 100, 104 S. Ct. at 908 ("It is clear, of course, that in the

absence of consent a suit in which the State or one of its agencies or departments is

named as the defendant is proscribed by the Eleventh Amendment.").  "This

jurisdictional bar applies regardless of the nature of the relief sought."  *Id.*; *Cory v.

White*, 457 U.S. 85, 91, 102 S. Ct. 2325, 2329 (1982) ("[T]he Eleventh

Amendment by its very terms clearly applies to a suit seeking an injunction, a

remedy available only from equity.").  Further, the Eleventh Amendment applies

even to state law claims sought to be brought in federal court under pendent

jurisdiction.  *Pennhurst*, 465 U.S. at 120, 104 S. Ct. at 919 ("The Eleventh

Amendment should not be construed to apply with less force to [pendent]

jurisdiction than it does to the explicitly granted power to hear federal claims.").

As such, the Court must dismiss the State of Michigan and the Michigan State

Police from this lawsuit.

## 2.    *Defendants Snyder and Johnson*

Defendants also seek dismissal of Plaintiff's claims for monetary damages

against Defendants Snyder and Johnson, arguing that the State is the "real,

substantial party in interest and is entitled to invoke its sovereign immunity."

*Edelman v. Jordan*, 415 U.S. 651, 663, 94 S. Ct. 1347, 1356 (1974) (quotation

---

[7] The Michigan State Police is a principal department of the State of
Michigan.  Mich. Const. art. V, § 2 (1963).

omitted).  The Court agrees.  Accordingly, Defendants Snyder and Johnson are dismissed from the action to the extent that Plaintiff seeks retrospective monetary relief from them in their individual capacities.

**B.      Plaintiff's Individual Claims**

*1.      Ex Post Facto Clause*

Defendants argue that Plaintiff's *ex post facto* claim fails as a matter of law because the SORA, as amended in 2011, is not a criminal statute but rather is a civil, nonpunitive regulatory scheme designed to protect the public, not punish offenders.

The Constitution's *Ex Post Facto* Clause provides, in pertinent part: "No state shall . . . pass any . . . ex post facto Law[.]"  U.S. Const. art. I, § 10, cl. 1.  This clause prohibits legislative enactments constituting retroactive punishment.  *Smith*, 538 U.S. at 92, 123 S. Ct. at 1146.  "To fall within the ex post facto prohibition, a law must be retrospective--that is it must apply to events occurring before its enactment--and it must disadvantage the offender affected by it by altering the definition of criminal conduct or increasing the punishment for the crime."  *Cutshall v. Sundquist*, 193 F.3d 466, 476 (6th Cir. 1999) (quoting *Lynce v. Mathis*, 519 U.S. 433, 441, 117 S. Ct. 891, 896 (1997) (internal quotation marks and citation omitted)).

Judicial inquiry into the underlying purpose of legislative enactments challenged as violative of the *Ex Post Facto* Clause requires an assessment of "whether the legislature meant the statute to establish 'civil' proceedings." *Smith*, 538 U.S. at 92, 123 S. Ct. at 1146-47 (quotation omitted).  As the Supreme Court explained in *Smith*:

> If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is "'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'" *Ibid*. (quoting *United States v. Ward*, 448 U.S. 242, 248-249, 65 L. Ed. 2d 742, 100 S. Ct. 2636 (1980)). Because we "ordinarily defer to the legislature's stated intent," *Hendricks*, *supra*, at 361, "'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty," *Hudson v. United States*, 522 U.S. 93, 100, 139 L. Ed. 2d 450, 118 S. Ct. 488 (1997) (quoting *Ward*, *supra*, at 249); *see also Hendricks*, *supra*, at 361; *United States v. Ursery*, 518 U.S. 267, 290, 135 L. Ed. 2d 549, 116 S. Ct. 2135 (1996); *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 365, 79 L. Ed. 2d 361, 104 S. Ct. 1099 (1984).

*Smith*, 538 U.S. at 92, 123 S. Ct. at 1147.

Numerous federal courts, including the Supreme Court, have rejected the argument that sex offender registration and notification constitutes an *ex post facto* punishment forbidden by the Constitutional prohibition against retroactive punishment.  *See, e.g.*, *Smith*, 538 U.S. at 105-06, 123 S. Ct. at 1154 (holding, in a case of first impression, that the State of Alaska's sex offender act "is nonpunitive, and its retroactive application does not violate the *Ex Post Facto* Clause");

14

*Cutshall*, 193 F.3d at 477 ("Because the [Tennessee] Act imposes no punishment, the *Ex Post Facto* Clause is not implicated.").  Indeed, the Honorable Robert H. Cleland, another judge in this district, issued an Opinion and Order in March of 2013 addressing the constitutionality of the 2011 amendments to SORA.  Upon exhaustively analyzing the plaintiffs' *ex post facto* claim under the framework set forth in *Smith* and *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69, 83 S. Ct. 554, 567-68 (1963), Judge Cleland concluded that the "SORA, as amended in 2011, is a regulatory, not criminal statute.  Accordingly, [the plaintiffs' *ex post facto* challenge] must be dismissed because SORA does not, as a matter of law, violate the *Ex Post Facto* Clause."  *Doe*, 932 F. Supp. 2d at 814.

Having reviewed the considerable case law on the *ex post facto* implications of sex offender registration and notification statutes, the Court finds Judge Cleland's analysis and rationale persuasive.[8]  Therefore, the Court concludes that Plaintiff's challenge to the 2011 amendments to SORA fails to state a claim under the Constitution's *Ex Post Facto* Clause.

## 2.    *Double Jeopardy Clause*

---

[8] The Court notes that it has previously rejected an *ex post facto* challenge to the SORA, *Akella*, 67 F. Supp. 2d at 733-34, and references Judge Cleland's more recent opinion because it addresses the 2011 amendments to the Act.

To the extent that Plaintiff is arguing that the Act punishes him twice for the same offense in violation of the Fifth Amendment's Double Jeopardy Clause,[9] the Sixth Circuit upheld the State of Tennessee's sex offender registration act against a double jeopardy challenge in *Cutshall v. Sundquist*, 193 F.3d 466, 473-76 (6th Cir. 1999). Relying on the seven-factor test articulated in *Kennedy*, 372 U.S. 144, 83 S. Ct. 554 – the same test employed in the *Ex Post Facto* Clause setting – the panel concluded "that the Act does not violate the prohibition against double jeopardy." *Cutshall*, 193 F.3d at 476.

As established in relation to Plaintiff's *ex post facto* claim, the SORA's purpose is regulatory, not punitive. As such, it does not violate the Double Jeopardy Clause, which "protects only against the imposition of multiple *criminal* punishments for the same offense, . . . and then only when such occurs in successive proceedings." *Id.* at 473 (emphasis in original) (quotation omitted).

### 3.   Eighth Amendment

Plaintiff alleges that the SORA violates the Eighth Amendment. (Compl. ¶ 20.) This amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S.

---

[9] The Double Jeopardy Clause of the Fifth Amendment provides, in relevant part, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Fifth Amendment applies to the states through the Fourteenth Amendment's Due Process Clause and the doctrine known as incorporation. *Benton v. Maryland*, 395 U.S. 784, 89 S. Ct. 2056 (1969).

Const. amend. VIII.  The contours of Plaintiff's Eighth Amendment claim are not entirely clear, as Plaintiff alleges that enactment of the SORA created "a pervasive risk of harm where plaintiff's house was shot up with plaintiff clinging to the floor for his life, loss of plaintiff's job, attempts to break in his house and him being followed have occurred, defendants had actual knowledge of the subjective risk and failed to take measures and in fact continue to create greater risk of harm where the information plaintiff is obligated to give is given to the public and not limited to law enforcement, leaving plaintiff in continuous fear for his safety, creating a greater problem instead of solving it."  (Compl. ¶ 20.)

To the extent that Plaintiff argues that the Act violates the Eighth Amendment's prohibition against cruel and unusual punishment, the Court has already concluded that the Act is regulatory in nature, not punitive.  In other words, the Act is not punishment, therefore rendering the Eighth Amendment inapplicable.  *Cutshall*, 193 F.3d at 477 ("We have already concluded that the Act does not impose punishment; it is regulatory in nature.  Therefore, it does not violate the Eighth Amendment's prohibition on cruel and unusual punishment.").

The Court is mindful of its duty to construe *pro se* pleadings more liberally than those drafted by attorneys.  While not required to create arguments on behalf of unrepresented litigants, the Court notes that the allegations set forth in Plaintiff's Complaint are capable of being construed as alleging a claim arising from the

17

substantive protections of the Fourteenth Amendment's Due Process Clause.[10]

However, to the extent such a construction is possible, the claim fails as a matter of

law because "nothing in the language of the Due Process Clause itself requires the

State to protect the life, liberty, and property of its citizens against invasion by

private actors. The Clause is phrased as a limitation on the State's power to act,

not as a guarantee of certain minimal levels of safety and security." *DeShaney v.*

*Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 195, 109 S. Ct. 998, 1003

(1989).

### 4.    *Right to Privacy*

According to Plaintiff, the Act infringes on constitutionally protected

privacy interests by compiling and disseminating "information that is not a matter

of public record[.]"  (Compl. ¶ 18.)  Plaintiff complains that the publically-

accessible registry contains highly-private details of his personal life, such as "[his]

personal property, private education, medical records, employers, contractors,

routes he travels, e-mail address, home address, employer address, where he goes,

cars[] he may own or use, his address, licences [*sic*], as well as the very right to

control the use of one's own name, picture, or likeness [] and to prevent another

---

[10] The Due Process Clause of the Fourteenth Amendment prohibits states
from depriving "any person of life, liberty, or property, without due process of
law[.]"  U.S. Const. amend. XIV, § 1.

from using it for commercial benefit without plaintiff's consent."[11]  (*Id.*)
According to Plaintiff, "[t]his unjustified exploitation an[d] intrusion into one's
personal activities impedes the right to just be left alone."  (*Id.*)

As an initial matter, Plaintiff appears to misapprehend the distinction
between the information contained in the Michigan State Police law enforcement
database and the information made available to the public on the internet website.
Michigan Compiled Laws § 28.728, the portion of the SORA describing the
information sex offenders must provide upon registering under the Act, makes
clear that the information that the Michigan State Police must maintain in "a
computerized law enforcement database" is more expansive than the information
contained on the "public internet website[,]" which, it bears emphasizing, is
"separate from the law enforcement database[.]"  Mich. Comp. Laws § 28.728(1)-
(2).  The publically-accessible website does not, contrary to Plaintiff's assertions,
contain Plaintiff's medical records, email address, or professional licenses, nor
does it describe the routes Plaintiff often travels or places he frequents.  The
website does, however, provide information regarding Plaintiff's place of
residence, employment, and educational institution, as well as the license plate
number and description of any motor vehicle owned or regularly operated by him.
The Court must therefore determine whether the information contained on the

---

[11] The Court notes that it is entirely unclear from the Complaint how the
website commercially exploits images of sex offenders.

19

website infringes Plaintiff's constitutionally-protected privacy rights, rights stemming from the substantive component of the Fourteenth Amendment's Due Process Clause.

"The substantive component of the Due Process Clause protects 'fundamental rights' that are so 'implicit in the concept of ordered liberty' that "'neither liberty nor justice would exist if they were sacrificed.'" *Doe XIV v. Mich. Dep't of State Police*, 490 F.3d 491, 499 (6th Cir. 2007) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S. Ct. 149, 152 (1937)).  Rights qualifying for such constitutional protection include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." *Id.* (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 2267 (1997) (internal citations omitted)).  While the Supreme Court has intimated that substantive due process may protect "the individual interest in avoiding disclosure of personal matters," *Whalen v. Roe*, 429 U.S. 589, 599, 97 S. Ct. 869, 876 (1977), the right has been construed narrowly, and the Sixth Circuit in *Cutshall* indicated that the constitutional right of privacy "does not provide" sex offenders "with a right to keep [their] registry information private," 193 F.3d at 481.

Each federal appellate court considering substantive due process arguments against the registration requirement of sex-offender registries has found that the

laws mandating the registry are constitutional. *Doe XIV*, 490 F.3d at 500 (citing *Doe v. Moore*, 410 F.3d 1337, 1345 (11th Cir. 2005) (holding that the right to refuse under a sex-offender statute is not a fundamental rights); *Doe v. Tandeske*, 361 F.3d 594, 597 (9th Cir. 2004) (per curiam) ("[P]ersons who have been convicted of serious sex offenses do not have a fundamental right to be free from . . . registration and notification requirements. . . ."); *Gunderson v. Hvass*, 339 F.3d 639, 643 (8th Cir. 2003) (concluding that the sex-offender registration statute does not infringe the plaintiff's fundamental right to a presumption of innocence); *Paul P. v. Verniero*, 170 F.3d 396, 405 (3d Cir. 1999) (holding that the effects of registering under a sex-offender registration statute fail "to fall within the penumbra of constitutional privacy protection")).  Indeed, the Sixth Circuit has "reiterate[d] that 'not all rights of privacy or interests in nondisclosure of private information are of constitutional dimension, so as to require balancing government action against individual privacy.'" *Id.* (quoting *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1062 (6th Cir. 1998) (analyzing the substantive due process rights of undercover police officers in not having their personal identifying information disclosed to criminal defendants)).  Because no fundamental right is implicated, the Court applies rational basis review. *Id.* at 501.

Plaintiff's claim that widespread dissemination of information concerning his conviction of a sex offense is somehow violative of his right to privacy ignores

21

the inescapable fact that this information is already the subject of public record. With respect to the other information contained on the website, this Court has previously held that "the dissemination of an offender's address does not violate any constitutionally protected privacy interests." *Akella*, 67 F. Supp. 2d at 730. This is because "the 'nature and significance' of the state's interest justifies the intrusion on [Plaintiff's] interests." *Id.* (quotation omitted). The remaining information on the website withstands rational basis review because the public's interest in preventing and protecting against future criminal sexual acts by convicted sex offenders justifies the collection and dissemination of the website's contents. *Doe XIV*, 490 F.3d at 501.

Accordingly, the Court rejects Plaintiff's substantive due process challenge to the SORA.

## 5.   *State Law Claims*

Plaintiff raises two claims that appear to rest in state law: a claim that sex offender registration "encroaches on the final judgment of the sentencing court," therefore violating separation-of-powers principles, and a claim that requiring his signature on registration forms creates some kind of "unconscionable agreement." (Compl. ¶¶ 19, 21.)

Having dismissed the federal causes of action, the Court declines to exercise supplemental jurisdiction over the state law claims referenced in the Complaint.

22

*See* 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it had original jurisdiction.").

## IV.   CONCLUSION AND ORDER

For the reasons stated herein, the Court concludes that Plaintiff's constitutional challenges to the SORA fail to state a plausible claim for relief pursuant to 42 U.S.C. § 1983.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss is **GRANTED** and Plaintiff's federal constitutional claims are **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE** to Plaintiff's right to re-file the claims in state court.

Dated: January 20, 2015

s/Patrick J. Duggan
PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

**Derrick Cain**
12016 Glastonbury
Detroit, MI 48228

**Erik A. Grill, AAG**